# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re: | * |
| WILLIAM HAYMORE BRAMMER, Jr., Debtor | * Case No. 16-00642 SMT |
|  | * Chapter 13 |
| U.S. BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF BUNGALOW SERIES III TRUST, Movant | * |
| v. |  |
| WILLIAM HAYMORE BRAMMER, Jr. Respondent | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEBTOR'S OPPOSITION TO CREDITOR'S NOTICE OF DEFAULT AND NOTICE OF TERMINATION OF AUTOMATIC STAY**

Comes now Charles M. Maynard, Esq., counsel for Debtor William H. Brammer, Jr., and opposes Debtor Wilmington Trust's Notice of Default under Consent Order as follows:

1. Creditor issued its Notice of Default on September 5, 2019, noting that Debtor did not render payments to Creditor with regard to the advance of property taxes paid for 2007 and 2008.

2. That sometime during the months of May through June 2019, Debtor received notice that the underlying mortgage would be serviced by SN Corporation as opposed to FCI Lender Services, Inc., and Debtor proceeded to make his June, July, and August payments to SN Corporation. No notice of change of counsel was provided with the notice of changed servicer.

3. Just prior to the former Creditor Wilmington Trust's payment of Debtor's property taxes, Debtor was negotiating a payment plan with the District of Columbia Office of Tax and Revenue regarding the 2007 and 2008 outstanding real property taxes and coming to a resolution on that plan to spread payments over three years when Creditor Wilmington Trust, without prior notice to Debtor, paid the past owed real property taxes for 2007 and 2008 giving rise to the issue before the Court now.

4. Debtor maintains that the subject Notice of Default and Request to Terminate the Automatic Stay was improperly issued for the following reasons.

5. Debtor provided prior creditor's counsel, Mark Meyers, Esquire a partial cure of $4,000 on May 14, 2009, in certified funds along with correspondence noting hardships encountered to which counsel was previously alerted, changes in circumstances by having to refund a client's funds held in trust that were largely the basis Debtor's proffered ability to resolve the property taxes advanced and Debtor's willingness to enter into a consent order with the prior creditor. **See Exhibit A**. In this correspondence, Debtor thanked Creditor's counsel in advance for their forbearance while Debtor sorted out the issues presented. Having no response from the Creditor's counsel to this correspondence, Debtor believed that a forbearance by the Creditor was in effect.

6. The sum presented by the current Creditor US National Bank in its Notice of Default does not take into account the partial cure made by the Debtor to the prior Creditor for the past property taxes advanced.

7. The hardships that Debtor presented to the prior Creditor's counsel both by email as well as the correspondence of May 14, 2019, continues to this day. Debtor in the past year has experienced significant challenges during the past posed by family health issues (namely

his youngest 1 year old daughter with suffering with GERD[1] since birth) as well as care for his other daughter that has significantly limited my available time to vigorously pursue the collection of accounts receivable, service current clients, and seek follow on business. Debtor is hopeful that this situation is remedying as Debtor's daughter is undergoing a new regimen prescribed by a pediatric gastrointestinal physician for his youngest daughter's GERD. In addition to the GERD suffered by Debtor's youngest daughter and the trauma of this period, Debtor's wife was diagnosed with post-partum depression for which she is seeking treatment which has significantly posed additional challenges to the Debtor in that has had to assume more and more child care duties for his infant daughter and toddler that significantly impacted his time to attend to his business. To compound matters, Debtor himself has been suffering from and seeking treatment for depression. All of these circumstances have been and are beyond the Debtor's control.

8. Despite these hardships, Debtor has clients on board who are paying and has been allowing Debtor to service the mortgage in question as well as the plan with the Trustee, is more actively pursuing action with invoices due, and is aligning new business opportunities. Debtor has significant accounts receivable for which he is seeking payment from clients that aggregately totals over $100,000. **See Exhibit B**. In addition, Debtor expects infusion of funds of approximately $13,500 from his clients DYNC and Porscia Fashion respectively before the end of September, in addition to the amounts depicted in the accounts receivable and from which certain sums are expected to be received.

---

[1] GERD is Gastro-Intestinal Reflux Disease. It has presented itself in Debtor's daughter initially with her inability to digest food, vomiting frequently, limiting weight gain, and extreme irritability.

3

9. Had Debtor intended to default and allow a foreclosure to proceed, he would not have made a partial cure nor continued making mortgage payments to the Creditors and plan payments to the Trustee.

10. In curing the default, Debtor does need to ensure that he is able pay for his family's health insurance each month, given his youngest daughter's medical condition as well as his wife's much needed therapy, in addition to making current plan payments and mortgage payments.

11. As a result, Debtor requests that this Court vacate the consent order due to the hardships Debtor and his family have suffered and to allow Debtor to cure the remainder owed Creditor for the advanced property taxes via monthly payments over the next year, to be paid separately from the mortgage, until the amount in question is cured. [2] [3]

---

[2] I*n re Davis*, 110 B.R. 834, 836 (Bankr. W.D. Tenn. 1989) (§ 1322(b)(5) is not specifically limited to prepetition defaults. In fact, § 1322(b)(5) provides for the curing of "any defaults". A postconfirmation curing under § 1322(b)(5) does not, ipso facto, constitute an impermissible modification of....[lender's] rights in contravention of § 1322(b)(2).) See also *In re Kapp*, 315 B.R. 87, 89 n.7 (Bankr. W.D. Mo. 2004)

[3] While a consent order is not a final order unless it is granted, Bankruptcy courts have vacated final orders and reinstated automatic stays due to exceptional circumstances suffered by the Debtor what were beyond his control. See *Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 69 (B.A.P. 6th Cir. 2004) (Bankruptcy court plainly did not believe that Debtor was indifferent or careless as to his failure to meet his plan obligations and to oppose dismissal. Rather, the bankruptcy court focused on Debtor's health issues as events beyond his control.  Rule 60(b)(6) [of the Federal Rules of Civil Procedure] authorizes vacation of a judgment or order if a court determines, in its sound discretion, that substantial justice would be served if relief were granted) citing *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998)  "In a Chapter 13 bankruptcy context, substantial justice was served by reinstating Debtor's case, thus fostering the bankruptcy policies of promoting both reorganization and equality of distribution to creditors. Where, as here, the inability to act resulted from sickness and hospitalization beyond a party's control, and where substantial justice will in turn be served by vacating a dismissal order, other courts have found the type of extraordinary circumstances within the ambit of Rule 60(b)(6)." *Geberegeorgis at* 70.

Wherefore, Debtor requests that this Honorable Court

(1) Deny Creditor's the relief it seeks under the Notice of Default and Request to Terminate the Automatic Stay issued;

(2) To vacate the consent order due to the changed circumstances and hardships beyond Debtor's control;

(3) Based on the hardships presented by Debtor, allow Debtor to cure the remainder to Creditor for advanced property taxes via monthly payments over a period of one (1) year;

(4) Grant other such relief as just and proper.

Date:  September 15, 2019               Respectfully Submitted,

/s/Charles M. Maynard
Charles M. Maynard, Esq.
**LAW OFFICE OF CHARLES M. MAYNARD**
200-A Monroe Street, Suite #115
Rockville, MD 20850
301-294-6003
301-294-6004 FAX
*Counsel for Debtor*

**CERTIFICATE OF SERVICE**

**I DO HEREBY CERTIFY** that a copy of the foregoing Debtor's Opposition To Creditor's Notice Of Default And Notice Of Termination Of Automatic Stay was served on the 15th Day of September 2019 via the Court's CM/ECF system on the following:

Nancy Spencer Grigsby
185 Admiral Cochrane Drive
Ste. 240
Annapolis, MD 21401
T: (301) 805-4700
F: (301) 805-9577
*Chapter 13 Trustee*

Mark D. Meyer, Esq.
Rosenberg and Associates, LLC
4340 East West Highway, Ste. 600
Bethesda, MD 20814
*Counsel for Creditor Wilmington Savings Trust*

Dinh Ngo, Esq.
Bar No. VA055
McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707
301-490-1196
bankruptcyva@mwc-law.com
*Counsel for Movant Creditor U.S. National Bank*

                                                     /s/ Charles M. Maynard
                                                       Charles M. Maynard