**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | * |
| William Haymore Brammer, Jr., *Debtor* | * Case No. 16-00642 |
| | * Chapter 13 |
| | * Judge S. Martin Teel, Jr. |
| William H. Brammer, Jr., *Movant* | * |
| v. | * |
| U.S. Bank Trust National Association as Trustee of Bungalow Series III Trust (SN Servicing Corporation, Servicer) *Respondent* | * |

**DEBTOR'S EMERGENCY MOTION FOR EXTENSION OF TIME TO CURE AND TO CONTINUE AND OR MAINTAIN THE AUTOMATIC STAY**

COMES NOW Charles M. Maynard, Esq., counsel for Debtor William H. Brammer, Jr., and moves this Court to grant the Debtor an extension of time to cure the stipulated amounts owed as a result of the October 24, 2019, hearing and to continue and or maintain the automatic as follows:

1. Creditor issued its Notice of Default on September 5, 2019, noting that Debtor did not render payments to Creditor with regard to the advance of property taxes paid by Crediot for years 2007 and 2008.

2. A hearing on this matter was held before this Court on October 24, 2019. At the conclusion of this hearing, the Court granted the Debtor until November 30, 2019, to cure the outstanding amount. Debtor represented that be believed that he would be able to

make a full cure by this date based upon his clients' representations of when they would make payments to him. The court stated that it would issue an order as a result of this hearing sometime after the hearing. The signed order resulting from this hearing seems to have neither been filed nor docketed as of November 27, 2019. Perhaps, it may have been an oversight.

3. Sometime during the months of May through June 2019, Debtor received notice that the underlying mortgage would now be serviced by SN Corporation as opposed to FCI Lender Services, Inc., the previous servicer.

4. Debtor made his June, July, and August 2019 payments to SN Corporation and despite not receiving a notice of change of counsel nor a notice of changed servicer being provided.

5. Just prior to the former Creditor Wilmington Trust's payment of Debtor's property taxes, Debtor was negotiating a payment plan with the DC Office of Tax and Revenue regarding the years 2007 and 2008 outstanding real property taxes and while coming to a resolution on that plan to spread payments over three (3) years when Creditor Wilmington Trust, without prior notice to Debtor, paid the past real property taxes owed for years 2007 and 2008 giving rise to the instant issue now before the Court.

6. Debtor maintains that the subject Notice of Default and Request to Terminate the Automatic Stay was improperly issued for the following reasons:

    a. Debtor provided prior creditor's counsel, Mark Meyers, a partial cure of $4,000 on May 14, 2009, in certified funds along with correspondence noting hardships encountered to which counsel was previously alerted, changes in circumstances by having to refund a client's funds held in trust that were largely the basis

      Debtor's proffered ability to resolve the property taxes advanced and Debtor's willingness to enter into a consent order with the prior creditor. See Exhibit 1. In this correspondence, Debtor thanked Creditor's counsel in advance for their forbearance while Debtor sorted out the issues presented. Having no response from the Creditor's counsel to this correspondence, Debtor believed that a forbearance by the Creditor was in effect.

   b. The sum presented by the current Creditor US National Bank in its Notice of Default does not take into account the partial cure made by the Debtor to the prior Creditor for the past property taxes advanced.

7. The Debtor is also obligated to make regular monthly payments to the Trustee as part of his confirmed chapter 13 plan. The impact of the hardships outlined below impacts not only payments to the Mortgagee via its servicing company, but also to the Trustee. Therefore, as Debtor makes his payments to cure obligations to the Mortgagee he is also simultaneously remitting plan payments to the Trustee.

8. The hardships that Debtor presented to the prior Creditor's counsel both by email as well as the correspondence of May 14, 2019, continues to this day. Debtor in the past year has experienced significant challenges posed by family health issues (namely his youngest 1 year old daughter with suffering with GERD[1] since birth) as well as care for his other daughter that has significantly limited his available time to vigorously pursue the collection of accounts receivable, service current clients, and seek follow on business. In addition Debtor's wife was diagnosed with post-partum depression for which she is

---

[1] GERD is Gastro-Intestinal Reflux Disease. It has presented itself in Debtor's daughter initially with her inability to digest food, vomiting frequently, limiting weight gain, and extreme irritability.

seeking treatment and which has significantly posed additional challenges to the Debtor in that he has had to assume more and more child care duties for his infant daughter and toddler. To compound matters, Debtor himself has been suffering from and seeking treatment for depression. All of these circumstances have been and are beyond the Debtor's control.

9. Despite these hardships, Debtor has existing clients who are paying and have been allowing Debtor to service the mortgage in question, as well as the plan payments to the Trustee.

10. Debtor is continuing to actively pursue his collection efforts with respect to outstanding invoices due, and is aligning new business opportunities. Debtor has significant accounts receivable for which he is seeking payment from clients that aggregately totals over $100,000. See Exhibit 2.

11. Since the hearing, Debtor has made considerable effort by calling clients twice daily to procure payments from those clients who owe significant sums to the Debtor. Having secured payments from those clients' arrears, Debtor was able to remit his post-petition mortgage payment to the Mortgagee (see Exhibit 3) and remit a partial cure of the advanced property taxes owed in the amount of $8,000.00. The latter was mailed on November 17, 2019, via USPS Express Priority Mail, Tracking No. EJ 172 635 536 US. (See Exhibit 4)

12. A corporate client of the Debtor from China represented to the Debtor that it would wire $30,000.00 by November 29, 2019, in payment of invoices owed with respect to a land transaction in Georgetown, Washington, DC, which would allow the completion of the cure to the Mortgagee. As of the date of this motion, the Debtor his not yet received this

4

wire payment. Debtor learned only the afternoon of November 28, 2019, from the corporate client, a Chinese corporation, that the engagement manager was awaiting agreement from the investor group to remit payment of the invoices owed the Debtor for work performed and that he would not be able to wire the funds until the first week or second week of December 2019. This client has always been diligent and trustworthy in the past at remitting payment of their invoices.

13. Other clients have represented to the Debtor that they would be remitting payment for invoices they owe to the Debtor in early to mid-December 2019.

14. The Debtor also has an ongoing obligation to the Trustee in addition to the Mortgagee. From the fund received since the date of the last hearing on this matter, Debtor remitted the regular post-petition mortgage payment, the aforementioned partial cure, as well as payment to the Trustee of $2,500.00. (See Exhibit 5).

15. Had Debtor intended to default and allow a foreclosure to proceed, he would not have made partial cures nor continued making mortgage payments to the Creditors and plan payments to the Trustee.

16. By remitting his monthly post-petition mortgage payments as well as having twice remitted amounts in partial cure, at total of $12,000.00 thus far, of the property taxes advanced and owed, the Debtor is ensuring that the Mortgagee is adequately protected.

17. As a result, Debtor requests that this Court, due to the hardships Debtor and his family have undergoing and the good faith partial payments made toward curing outstanding amounts owed, to allow Debtor additional time of up to forty-five days (45) from the date

5

of the court's order to cure the remainder owed Creditor for the advanced property taxes and to keep the automatic stay in place for that period and beyond. [2] [3]

Wherefore, Debtor requests that this Honorable Court;

(1) Based on the hardships presented as well as evidence of payments made in an effort to cure the outstanding amounts due to the Respondant Mortgagee, allow Debtor an additional forty-five (45) days from the Court's order on this motion to remit the remainder owed Mortgagee in cure of the stipulated amounts owed at the October 24, 2019, hearing;

---

[2] I*n re Davis*, 110 B.R. 834, 836 (Bankr. W.D. Tenn. 1989) (§ 1322(b)(5) is not specifically limited to prepetition defaults. In fact, § 1322(b)(5) provides for the curing of "any defaults". A post confirmation curing under § 1322(b)(5) does not, ipso facto, constitute an impermissible modification of….[lender's] rights in contravention of § 1322(b)(2).) See also *In re Kapp*, 315 B.R. 87, 89 n.7 (Bankr. W.D. Mo. 2004)

[3] While a consent order is not a final order unless it is granted, Bankruptcy courts have vacated final orders and reinstated automatic stays due to exceptional circumstances suffered by the Debtor what were beyond his control. See *Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 69 (B.A.P. 6th Cir. 2004) (Bankruptcy court plainly did not believe that Debtor was indifferent or careless as to his failure to meet his plan obligations and to oppose dismissal. Rather, the bankruptcy court focused on Debtor's health issues as events beyond his control. Rule 60(b)(6) [of the Federal Rules of Civil Procedure] authorizes vacation of a judgment or order if a court determines, in its sound discretion, that substantial justice would be served if relief were granted) citing *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998) "In a Chapter 13 bankruptcy context, substantial justice was served by reinstating Debtor's case, thus fostering the bankruptcy policies of promoting both reorganization and equality of distribution to creditors. Where, as here, the inability to act resulted from sickness and hospitalization beyond a party's control, and where substantial justice will in turn be served by vacating a dismissal order, other courts have found the type of extraordinary circumstances within the ambit of Rule 60(b)(6)." *Geberegeorgis at* 70.

(2) To maintain the automatic stay to deny termination of the automatic stay for the

reasons stated above; and

(3) Grant other such relief as just and proper.

Date:  November 30, 2019                    Respectfully Submitted,

/s/ Charles M. Maynard
Charles M. Maynard, Esq.
**LAW OFFICE OF CHARLES M. MAYNARD**
200-A Monroe Street, Suite #115
Rockville, MD 20850
301-294-6003
301-294-6004 FAX
*Counsel for Debtor*

## **CERTIFICATE OF SERVICE**

**I DO HEREBY CERTIFY** that a copy of the foregoing Emergency Motion for Extension of Time to Cure and to Continue the Automatic Stay was served on this 30th Day of November 2019 via the Court's CM/ECF system and by mail postage on the following:


Nancy Spencer Grigsby
185 Admiral Cochrane Drive
Ste. 240
Annapolis, MD 21401
T: (301) 805-4700
F:  (301) 805-9577
*Chapter 13 Trustee*

Dinh Ngo, Esq.
Bar No. VA055
McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707
301-490-1196
bankruptcyva@mwc-law.com
*Counsel for Movant Creditor U.S. National Bank*


Mark D. Meyer, Esq.
Rosenberg and Associates, LLC
4340 East West Highway, Ste. 600
Bethesda, MD 20814
*Counsel for Creditor Wilmington Savings Trust*


                                                /s/ Charles M. Maynard
                                                  Charles M. Maynard, Esq.

9